UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ORLANDO OCASIO,

                Petitioner,

       v.

JOSEPH NOETH,

             Respondent.

_____

               **DECISION AND ORDER**

               19-CV-06894 EAW

## INTRODUCTION

*Pro se* petitioner Orlando Ocasio ("Petitioner") is a prisoner incarcerated at the Attica Correctional Facility who has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  More particularly, Petitioner asserts claims that he was denied the effective assistance of counsel because his trial counsel failed to call a medical expert and failed to effectively cross-examine the prosecution's experts, that the trial court failed to conduct any inquiry into his complaints regarding his trial counsel's performance, and that there was insufficient evidence to support his convictions.  (Dkt. 7).  Petitioner has further filed: (1) a motion to stay; and (2) a motion for "investigative and expert services."  (Dkt. 40; Dkt. 46).  For the reasons that follow, the Court denies both Petitioner's pending motions and the amended petition.

_____

[1]      The operative pleading is the amended petition, filed on July 13, 2020.  (Dkt. 7).

# BACKGROUND

## I.   State Court Trial Proceedings

In January of 2009, a Monroe County grand jury returned an indictment charging Petitioner with one count of predatory sex assault against a child in violation of New York Penal Law § 130.96, three counts of criminal sexual act in the first degree in violation of New York Penal Law § 130.50(3), two counts of rape in the first degree in violation of New York Penal Law § 130.35(3), and four counts of sexual abuse in the first degree in violation of New York Penal Law § 130.65(3).  (Dkt. 25 at 4-7).  The trial court appointed the Monroe County Public Defender's Office to represent Petitioner.  Petitioner was arraigned on January 9, 2009.  (Dkt. 25-1 at 1-3).

On January 27, 2009, the trial court received an undated letter from Petitioner in which he stated that trial counsel had "done next to nothing to assist or defend [him]," that Petitioner had "requested some copys [sic] of document that can prove [his] innocence on this case and all [he] get[s] is negative answer" from trial counsel, and that he had been "completely disappointed on [trial counsel's] representation in court," and further requested that trial counsel be replaced.  (Dkt. 25 at 40, 70).  The record does not reflect that the trial court took any action regarding this letter.

On March 13, 2009, Petitioner appeared before the trial court with trial counsel for argument on motions filed by trial counsel in February of 2009.  (Dkt. 25-1 at 5-6).  When asked by the trial court whether he was appearing with trial counsel, Petitioner responded "yup."  (*Id*. at 6).  At no point during this appearance did Petitioner indicate any

dissatisfaction with trial counsel's performance, nor did he renew his request for new counsel.

A *Huntley*[2] hearing was held before the trial court on March 19-20, 2009.  (*Id*. at 10-68).  Again, at no point during these proceedings did Petitioner advise the trial court of any dissatisfaction with trial counsel's performance.

The trial court held a bench trial on June 22-24, 2009.  At the bench trial, minor victim C.F testified that in 2005, just prior to her ninth birthday, Petitioner—her stepfather—anally penetrated her.  (Dkt. 25-1 at 83-88).  C.F. further testified that she reported this assault to her twin sister J.F. and her younger sister K.F., but not to her mother.  (*Id*. at 90).  C.F. further testified to witnessing Petitioner sexually assaulting K.F., who was two years younger than her.  (*Id*. at 92).  C.F. testified that K.F. yelled for C.F. and J.F. to help her and that C.F. and J.F. pulled Petitioner off K.F. and all three children ran.  (*Id*. at 93-94).  C.F. told the trial court that she and her sisters told their mother that Petitioner had hit them with belts, but did not report the sexual abuse at the time it occurred.  (*Id*. at 97).  However, C.F. reported the sexual abuse to her mother years later, in 2008.  (*Id.* at 97-98, 116).

J.F. also testified at trial.  J.F. testified that on one occasion in the summer of 2004, she entered her mother's room to give Petitioner a hug and he grabbed her and penetrated her both vaginally and anally.  (*Id*. at 146-52).  J.F. further testified that Petitioner stopped when she threatened to tell her mother.  (*Id*. at 154-55).  However, J.F. did not report the

---

[2]        *People v. Huntley*, 15 N.Y.2d 72 (1965).

assault to her mother at that time. (*Id*.). J.F. then testified that later in the summer of 2004, on a separate occasion, she went into her mother's room to retrieve a cordless telephone, and that Petitioner again penetrated her vaginally and anally. (*Id*. at 157-66). J.F. did not report this assault to her mother because Petitioner threatened to kill her if she did so. (*Id*. at 167). J.F. also recounted an incident in which she found her younger sister K.F. lying on the floor with no bottoms or underwear on with Petitioner on the other side of the bed pulling up his underwear. (*Id*. at 169-73). J.F. stated that she took K.F. upstairs and that K.F. took a long shower but did not talk about what had happened. (*Id*. at 173-74).

K.F. was also a trial witness. With substantial difficulty, she testified on direct examination that Petitioner vaginally and anally penetrated her on multiple occasions beginning when she was approximately seven or eight years old and continuing until she was in the second or third grade. (*Id*. at 226-32). K.F. testified that sometimes her sisters were in the room when the sexual abuse occurred and that sometimes she was alone with Petitioner. (*Id*. at 234-35). However, K.F. was unable to speak when cross-examined by trial counsel, and she ultimately was excused as a witness. (*Id*. at 239-40).

The prosecution called Dr. Danielle Thomas-Taylor, a pediatrician employed by Rochester General Hospital. (*Id*. at 241-42). Dr. Thomas-Taylor testified that she had completed a dual fellowship in general academic pediatrics and child abuse and forensic pediatric medicine. (*Id*. at 243). Dr. Thomas-Taylor further testified that she had examined C.F. and J.F. in October of 2008, on a referral from their primary care physician. (*Id*. at 247-48, 251). Dr. Taylor-Thomas testified that she performed genital and rectal examinations on C.F. and J.F. and that the examination of C.F. was generally normal, with

some non-specific findings that neither confirmed nor disputed the disclosure she had made, while J.F. similarly had non-specific findings on her genital exam and a generally normal rectal examination.  (*Id*. at 246-66).  Dr. Taylor-Thomas further testified that the majority of sexually abused children, including children who have been anally penetrated, have "non-specific findings or no real findings" and that only five to ten percent have "physical findings of sexual abuse."  (*Id*. at 261).  Dr. Taylor-Thomas explained that a delay in reporting would make it much more difficult to see specific findings even if there had been injury, and that after a year she would not expect to discover physical findings.  (*Id*. at 261-62).  Trial counsel did not cross-examine Dr. Taylor-Thomas.  (*Id*. at 266).

The prosecution then called as an expert Stefan Perkowski, the program director for Child and Adolescent Treatment Services, an agency that provides psychotherapy to children and families who have experienced trauma.  (*Id*. at 267).  Mr. Perkowski explained that he is a licensed clinical social worker with training and certifications in the area of child sexual abuse.  (*Id*. at 269).  Mr. Perkowski testified regarding child sexual abuse accommodation syndrome ("C.S.A.A.S.").  (*Id*. at 270-85).  Trial counsel briefly cross-examined Mr. Perkowski, eliciting that C.S.A.A.S. is not a diagnostic tool and cannot be used to determine whether someone has or has not been abused.  (*Id*. at 286).

At the close of the prosecution's case, the trial court granted the defense's motion to strike K.F.'s testimony and to dismiss the count of predatory sexual assault against a child involving K.F.  (*Id*. at 288-89).  The trial court further dismissed one of the counts of sexual abuse against J.F. due to a lack of evidence.  (*Id*.).  Defendant's trial counsel did not call any witnesses or put in any evidence.

In his closing argument, trial counsel argued at length that C.F. and J.F. were not credible witnesses, pointing to alleged inconsistencies within and between their testimonies and arguing that it was physically impossible for the sexual assaults to have occurred in the manner they had described.  (*Id*. at 292-301).  Trial counsel further argued that there was no corroborating evidence of any kind, pointing specifically to the lack of any physical findings by Dr. Taylor-Thomas.  (*Id*. at 301-302).

On June 26, 2009, the trial court announced its verdict, finding Petitioner guilty on three counts of criminal sexual act in the first degree and three counts of sexual abuse in the first degree and not guilty on two counts of rape in the first degree.  (*Id*. at 320-21).  On July 24, 2009, Petitioner was sentenced to an aggregate term of 30 years in prison to be followed by five years of post-release supervision.  (*Id*. at 323-33).

## II.   **Direct Appeal**

Represented by new counsel, Petitioner appealed his convictions, arguing that: (1) trial counsel was ineffective for having failed to call a medical expert or to effectively cross-examine the prosecution's experts; (2) the trial court committed error by failing to inquire into his pre-trial complaint regarding trial counsel's performance; and (3) the verdict was against the weight of the evidence.  (Dkt. 25 at 11-49).  On February 11, 2011, the New York State Supreme Court, Appellate Division, Fourth Department (the "Appellate Division") unanimously affirmed Petitioner's convictions.  *People v. Ocasio*, 81 A.D.3d 1469 (4th Dep't 2011).  The Appellate Division concluded that: (1) Petitioner's challenge to trial counsel's cross-examination of the prosecution's witnesses was nothing more than a disagreement with strategy and tactics; (2) Petitioner's contention that trial

counsel should have called a medical expert involved matters outside the record on appeal and accordingly was properly brought on a motion pursuant to New York Criminal Procedure Law ("CPL") article 440; (3) Petitioner abandoned his request for substitution of counsel and, in any event, his letter to the trial court did not suggest a serious possibility of good cause for substitution; and (4) the verdict was not against the weight of the evidence. *Id*. at 1469-70.

Petitioner sought leave to appeal to the New York Court of Appeals. (Dkt. 25 at 71-74). The New York Court of Appeals denied leave on May 9, 2011. *People v. Ocasio*, 16 N.Y.3d 898 (2011). The Supreme Court denied certiorari on October 3, 2011. *Ocasio v. N.Y.*, 565 U.S. 910 (2011).

## III.   State Court Post-Conviction Motions

On January 23, 2012, Petitioner, now acting *pro se*, filed a CPL § 440.10 motion to vacate the judgment. (Dkt. 25 at 77-84, 98-109). He argued that his convictions were invalid because: (1) trial counsel failed to present a defense expert or cross-examine the prosecution's experts regarding the importance of forensic evidence; (2) the trial court failed to inquire into his complaint regarding trial counsel; and (3) trial counsel failed to subpoena witnesses, including his wife and mother, who could have testified that they were living in the house at the time the sexual abuse was allegedly occurring. (*Id.*). Petitioner also argued more generally that he was innocent of the crimes of conviction. (*Id.*).

The prosecution opposed this motion, arguing that Petitioner's challenge to trial counsel's cross-examination performance was barred pursuant to CPLR § 440.10(2)(a) because it had been decided on the merits on direct appeal and that Petitioner's challenge

to trial counsel's failure to call a defense expert was insufficient because he failed to present evidence supporting the claim beyond his own affidavits. (*Id*. at 121-22). The prosecution further argued that Petitioner's challenge to trial counsel's failure to subpoena witnesses was "an issue of record which could have been raised on appeal." (*Id*. at 122). As to Petitioner's claim of innocence, the prosecution noted that Petitioner's arguments were based on evidence known to him before trial and otherwise failed to comport with the requirements of CPL § 440.30(4)(b). (*Id*. at 123-24). The trial court denied this motion on September 21, 2012, "for the reasons set forth in the [prosecution's] response." (*Id*. at 126). Petitioner did not seek leave to appeal the denial of his CPL § 440.10 motion.

On July 1, 2018, Petitioner moved in the Appellate Division for a writ of error coram nobis, arguing that appellate counsel was ineffective for failing to argue that the verdict was repugnant as inconsistent. (Dkt. 25 at 129-38). This motion was denied on June 7, 2019. *People v. Ocasio*, 173 A.D.3d 1721 (4th Dep't 2019). The New York Court of Appeals denied leave to appeal on August 20, 2019. *People v. Ocasio*, 34 N.Y.3d 935 (2019).

On September 26, 2018, Petitioner filed a second *pro se* CPL § 440.10 Motion to vacate the judgment. (Dkt. 25 at 212-40). Petitioner again argued that the trial court erred in failing to investigate his complaint against trial counsel and that trial counsel was ineffective by failing to effectively cross-examine the prosecution's experts and by failing to call a medical expert. (*Id*.). The trial court denied this motion on July 8, 2019, holding that it was procedurally barred pursuant to CPL §§ 440.10(2)(a) and 440.10(3)(c). (*Id*. at 387-90). The Appellate Division denied Petitioner leave to appeal on November 4, 2019.

(*Id*. at 401).

On March 13, 2019, Petitioner filed a second motion for a writ of error coram nobis in the Appellate Division.  (*Id*. at 402-11).  The Appellate Division denied this motion on June 7, 2019.  (*Id*. at 437).  The Appellate Division further denied leave to reargue on September 27, 2019.  (*Id*. at 446).

## IV.    **Federal Habeas Corpus Proceeding**

Petitioner commenced this action on December 4, 2019.  (Dkt. 1).  He filed the amended petition on July 13, 2020. (Dkt. 7).  Respondent filed his response to the amended petition on February 3, 2021 (Dkt. 23), and Petitioner filed a reply on February 5, 2021 (Dkt. 25).  Petitioner also filed numerous motions, including a motion for appointment of counsel (Dkt. 26), a motion to expand the record (Dkt. 28), a motion for reconsideration (Dkt. 35), and a motion to stay (Dkt. 36), which were denied by the Court (Dkt. 27; Dkt. 34; Dkt. 37).

The pending motion for a stay was filed on January 20, 2022.  (Dkt. 40).  Respondent opposed the motion on February 11, 2022 (Dkt. 42), and Petitioner filed multiple replies (Dkt. 43; Dkt. 44).  Petitioner filed a further reply regarding the merits of the amended petition on February 28, 2022.  (Dkt. 45).  Petitioner also filed his motion for "investigative and expert services" on February 28, 2022.  (Dkt. 46).

**DISCUSSION**

I. **Motion to Stay**

The Court turns first to Petitioner's motion to stay this matter. (Dkt. 40). Petitioner's request is based on a recent amendment to the CPL that he claims makes his amended petition a "mixed" petition presenting both exhausted and unexhausted claims. (*Id.*).

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011). A state inmate must exhaust his state administrative remedies before pursuing federal habeas relief. *Zarvela v. Artuz*, 254 F.3d 374, 378 (2d Cir. 2001). "State remedies are deemed exhausted when a petitioner has: (i) presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in the lower courts) and (ii) informed that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney Gen. of the State of N.Y.*, 280 F.3d 87, 94 (2d Cir. 2001) (citations omitted). Where a federal habeas petition contains both claims that have been exhausted in the state courts and unexhausted claims, it is considered a mixed petition. *Rhines v. Weber*, 544 U.S. 269, 271 (2005). A district court presented with a mixed petition may, in limited circumstances, "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id.* at 275. In particular, this "stay and abeyance" procedure is

appropriate only if "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" and the unexhausted claims are not "plainly meritless." *Id*. at 277.

New York State recently amended CPL § 440.10 to permit all ineffective assistance of trial counsel claims to be raised via § 440.10 motions, even record-based claims that could have been brought on direct appeal. *See* 2021 N.Y. Assembly Bill No. 2653, N.Y. Two Hundred Forty-Fourth Legislative Session (Oct. 25, 2021). Petitioner argues that his ineffective assistance of counsel claim based on trial counsel's failure to obtain an independent medical expert is now unexhausted due to this change. (*See* Dkt. 43 at 1).

The Court is unpersuaded by Petitioner's argument. The recent amendment to CPL § 440.10 expands the statute's scope to allow for record-based claims that could have been brought on direct appeal to be brought on collateral review. However, on the direct appeal of Petitioner's conviction, the Appellate Division expressly held that "[t]o the extent that defendant's contention concerning ineffective assistance of counsel is based upon defense counsel's alleged failure to consult experts or to conduct an investigation with respect to the medical and psychological evidence presented through the People's expert witnesses, it involves matters outside the record on appeal. Thus, that contention must be raised by way of a motion pursuant to CPL article 440." *Ocasio*, 81 A.D.3d at 1470. In other words, the issue was already one which could be raised via a CPL § 440.10 motion.

Further, the trial court rejected Petitioner's claim regarding the failure to obtain a medical expert in his first CPL § 440.10 on the merits because Petitioner had failed to present adequate supporting evidence. (Dkt. 125 at 121-22, 126); *see* CPL § 440.30(4)(b).

He then tried to raise the issue again in his second CPL § 440.10 motion, but the trial court found that he was barred from doing so because he "was in a position to adequately raise the issue[]" in his first CPL § 440.10 motion yet did not do so.  (*Id.* at 389); *see* CPL § 440.10(3)(c).  The Appellate Division denied Petitioner leave to appeal that denial.  There is accordingly an independent and adequate state procedural ground on which Petitioner's claim was denied, and the claim has been procedurally defaulted.  *See Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007).  A procedurally defaulted claim is deemed constructively exhausted for purposes of federal habeas review.  *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).  The recent amendments to CPL § 440.10 simply do not change this analysis.

Moreover, and for reasons discussed more fully below, Petitioner's argument regarding trial counsel's decision not to call a medical expert is without merit.  There is thus no basis for the Court to adopt a stay and abeyance procedure, and Petitioner's motion for the same (Dkt. 40) is accordingly denied.

## II.   Motion for Investigative and Expert Services

Petitioner's most recently filed motion seeks funds to pay for a medical expert. (Dkt. 46).  However, as this Court has already explained to Petitioner in denying his prior request for an independent pediatric medical examiner (*see* Dkt. 37 at 3), "review [of a habeas corpus petition] under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  It would not be appropriate for this Court to appoint a medical expert to present findings that no state court ever had a chance to review.

Petitioner cites 21 U.S.C. § 838 and 18 U.S.C. § 3006 in support of his request. (Dkt. 46 at 3). Neither of these citations has any relevancy to the appointment of a medical expert in a habeas case brought by a state inmate. Petitioner has not demonstrated his entitlement to the relief he seeks and his motion for investigative and expert services (Dkt. 46) is accordingly denied.

## III.   **Standard of Review for Amended Petition**

As noted above, "[t]he statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by" AEDPA. *Richter*, 562 U.S. at 97. AEDPA "revised the conditions under which federal courts may grant habeas relief to a person in state custody." *Kruelski v. Connecticut Superior Ct. for Jud. Dist. of Danbury*, 316 F.3d 103, 106 (2d Cir. 2003). Now, under § 2254(d), a federal court "shall not . . . grant[ ]" an application for a writ of habeas corpus "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). In addition, a state court's factual findings are entitled to a presumption of correctness which only may be rebutted by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a

question of law or if the state court decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.  Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] [Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Section 2254(d)'s standard for reviewing claims adjudicated on the merits by state courts is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (*per curiam*).  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 562 U.S. at 102.

"AEDPA 'sets forth a precondition to the grant of habeas relief . . . , not an entitlement to it,'" *Cardoza v. Rock*, 731 F.3d 169, 178 (2d Cir. 2013) (quoting *Fry v. Pliler*, 551 U.S. 112, 119 (2007)), "so even if the standard set forth in section [2254(d)(1) or] 2254(d)(2) is met, the petitioner still 'bears the ultimate burden of proving by a preponderance of the evidence that his constitutional rights have been violated,'" *id.* (quoting *Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012)).

## IV.   Petitioner's Claims

### A.   Ineffective Assistance of Counsel

"The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).  "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's

performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). A court need not address both components of the *Strickland* inquiry if a petitioner makes an insufficient showing on one. *Garner v. Lee*, 908 F.3d 845, 861 (2d Cir. 2018) ("[T]he object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (citation omitted)).

Moreover, where a state court has rejected the ineffective assistance of counsel claim, a "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt" applies on federal habeas review. *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he burden to show that counsel's performance was deficient rests squarely on the defendant. . . . [T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Id*. at 22-23 (quotations and original alterations omitted).

Here, Petitioner argues that trial counsel was ineffective because he failed to call a medical expert or to effectively cross-examine Dr. Taylor-Thomas and Mr. Perkowski. (Dkt. 7 at 5). As to the failure to call a medical expert, as the Court explained above, this claim is procedurally defaulted. Accordingly, the Court can reach this argument only if Petitioner can "show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989) (citations and quotations omitted). He

cannot make such a showing.  First, Petitioner has not demonstrated good cause for having failed to properly present this claim in his first CPL § 440.10 motion or for having failed to appeal the denial of that motion.  Indeed, he has offered no reason for such failure.

Second, Petitioner's claim lacks merit, such that he has not suffered prejudice.  "In general, whether or not to hire an expert is the type of strategic choice by counsel that may not be second-guessed on habeas corpus review."  *Murden v. Artuz,* 253 F. Supp. 2d 376, 389 (E.D.N.Y. 2001), *aff'd*, 60 F. App'x 344 (2d Cir. 2003).  Here, Petitioner has offered nothing beyond his own speculation that an expert existed who would have countered the testimony given by Dr. Taylor-Thomas and Mr. Perkowski, which is wholly insufficient to demonstrate ineffective assistance.  *Id*.; *see also Goodwin v. Duncan*, 668 F. Supp. 2d 509, 522 (W.D.N.Y. 2009).

*Gersten v. Senkowski*, 426 F.3d 588 (2d Cir. 2005), on which Petitioner heavily relies, is entirely distinguishable.  There, the prosecution's medical expert had testified that her physical examination was "highly suggestive of penetrating trauma," *id*. at 594, and the record contained an affidavit from a medical expert confirming that "exceptionally qualified medical experts could be found who would testify that the prosecution's physical evidence was not indicative of sexual penetration and provided no corroboration whatsoever of the alleged victim's story," *id*. at 608.  By contrast, in this case, Dr. Taylor-Thomas herself testified that her examinations of C.F. and J.F. revealed essentially normal findings that neither corroborated nor disproved their allegations of sexual abuse.  Indeed, the prosecution acknowledged in closing the limited utility of her testimony to its case, stating, "you might say oh, why did [the prosecution] even bother calling [Dr. Thomas-

Taylor], essentially wasting my time," and conceding that there was not any "physical proof" of the assaults. (Dkt. 25-1 at 315-16). Trial counsel thus could reasonably have concluded that presentation of a rebuttal expert (who presumably would confirm Dr. Taylor-Thomas's benign findings) was not effective trial strategy.

Finally, to the extent Petitioner is claiming actual innocence in an attempt to overcome the procedural bar, *see United States v. Olano*, 507 U.S. 725, 736 (1993) ("In our collateral-review jurisprudence, the term 'miscarriage of justice' means that the defendant is actually innocent."), he has fallen far short of making such a showing. To make the requisite showing of actual innocence, a petitioner must produce "new reliable evidence . . . that was not presented at trial," *Schlup v. Delo*, 513 U.S. 298, 324 (1995), and "must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* Here, Petitioner's actual innocence arguments rest not on any new reliable evidence, but on his own interpretation of the record and attacks on the credibility of the minor victims. This does not rise to the level of a colorable claim of actual innocence.

Turning to Petitioner's challenge to trial counsel's cross-examination of the prosecution's expert witnesses, the Appellate Division rejected this argument on the merits, and the Court does not find that conclusion unreasonable. *See Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) ("Decisions about whether to engage in cross-examination, and if so to what extent and in what manner, are strategic in nature and generally will not support an ineffective assistance claim." (quotation and alteration omitted)).

As to Dr. Thomas-Taylor, as explained above, she testified that she did not find

physical evidence of sexual abuse upon examination of C.F. and J.F.   Accordingly,

Petitioner's argument that trial counsel should have cross-examined her to elicit that "there

was no evidence of bleeding, fissures, or splits in the anal [area] of these girls or any other

evidence or trauma or redness, notches, tear, rectum scarrings, and other trauma to J.F.'s

hymen, labia, frenulum, or forchette" (Dkt. 7 at 5 (capitalization and parentheses omitted))

is misplaced—this is precisely what Dr. Thomas-Taylor had already acknowledged on

direct examination, albeit in more general terms.   Further, trial counsel could have

reasonably concluded that cross-examining Dr. Thomas-Taylor about her unremarkable

findings would simply afford her another opportunity to opine that such findings were not

unusual in cases where there was a significant delay between the abuse and the child's

report thereof, and was thus unlikely to be of any benefit to Petitioner.

As to Mr. Perkowski, Petitioner does not identify what questions he thinks trial

counsel should have asked but did not.   *See Brito v. United States*, No. 13-CR-589 (PKC),

2017 WL 3142074, at *4 (S.D.N.Y. July 24, 2017) (denying ineffective assistance of

counsel claim based on alleged failure to cross-examine where the petitioner did "not

support his conclusory allegations with any description of what topics or questions were

left out of the cross-examination").   The Court does note that Petitioner argued on direct

appeal that trial counsel should have questioned Mr. Perkowski on literature criticizing the

notion of C.S.A.A.S. as a "syndrome."   (*See* Dkt. 25 at 32-33).   However, as explained

above, trial counsel elicited from Mr. Perkowski on cross-examination a concession that

C.S.A.A.S. is not a diagnostic tool and cannot be used to determine whether someone has

or has not been abused.   (Dkt. 25 at 286).   In light of that key concession, trial counsel

could have reasonably concluded that a further colloquy with an expert witness about what does and does not constitute a medical "syndrome" was unlikely to be of any use to the trier of fact—which, in this case, was the trial court and not a jury.  In light of the deference that must be extended both to counsel in determining the scope of cross-examination and to the state courts in assessing an ineffective assistance of counsel claim, the Court finds no basis to grant Petitioner federal habeas relief.

The Court further does not find that a view of the record as a whole supports the conclusion that Petitioner was deprived of the effective assistance of counsel.  *See Richter*, 562 U.S. at 111 ("[I]t is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.").  Trial counsel obtained significant victories for Petitioner, including the striking of K.F.'s testimony, the dismissal of two charges, and an acquittal on the most serious charges in the indictment.  He did so while carefully threading the needle between pointing out inconsistencies in the minor victims' testimonies and not aggressively attacking sympathetic witnesses.  On the record before it, the Court does not find that trial counsel was ineffective.

### B.    Request for Substitution of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "The Supreme Court has nevertheless recognized that the right to choose one's own counsel is not absolute."  *United States v. Jones*, 381 F.3d 114, 119 (2d Cir. 2004) (citing *Wheat v. United States*, 486 U.S. 153 (1988)).  More specifically, "[t]he Sixth Amendment guarantees a criminal defendant an effective advocate, not necessarily the

advocate of his or her choosing." *Id.* "Because the right to counsel of one's choice is not absolute, a trial court may require a defendant to proceed to trial with counsel not of defendant's choosing; although it may not compel defendant to proceed with incompetent counsel." *United States v. Schmidt*, 105 F.3d 82, 89 (2d Cir. 1997). "[W]here a defendant voices a seemingly substantial complaint about counsel, the [trial] court should inquire into the reasons for dissatisfaction.  However, if the reasons proffered are insubstantial and the defendant receives competent representation from counsel, a court's failure to inquire sufficiently or to inquire at all constitutes harmless error." *United States v. John Doe No. 1*, 272 F.3d 116, 122 (2d Cir. 2001); *see also Norde v. Keane*, 294 F.3d 401, 412 (2d Cir. 2002) ("[W]here a defendant articulates the reasons for his request for new counsel, the failure of a trial judge to inquire into that request is a procedural irregularity, which may not itself be a basis for granting habeas relief.  Instead, in order to succeed on this Sixth Amendment claim, the petitioner must demonstrate that he was harmed by the trial judge's failure to inquire." (citation and quotation omitted)).

Here, the Appellate Division concluded that Petitioner had abandoned his request for substitution of counsel and that in any event his letter to the trial court did not "suggest a serious possibility of good cause for substitution." *Ocasio*, 81 A.D.3d at 1470.  That determination was neither contrary to nor an unreasonable application of controlling federal law.  Petitioner's letter, which was sent only three weeks after his arraignment, set forth only vague and conclusory assertions that trial counsel was not performing adequately, and cannot be said to have contained a substantial complaint.  As to Petitioner's general assertion that he was disappointed with trial counsel, it is well-established that the

Sixth Amendment does not "guarantee[] a meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983) (quotation omitted).

Further, there is no evidence of harm to Petitioner, inasmuch as he was not required to proceed with incompetent counsel. To the contrary, as discussed above, trial counsel secured significant victories while vigorously advocating on Petitioner's behalf.

### C.      Sufficiency of the Evidence

Petitioner's final argument is that the evidence was insufficient to support his convictions. (Dkt. 7 at 10). To the extent Petitioner is contending that his conviction was against the weight of the evidence (as he argued on direct appeal (*see* Dkt. 25 at 44)), that is a state law claim that is not cognizable on federal habeas review. *See, e.g., Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) ("'A "weight of the evidence" argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5)' which empowers New York State intermediate appellate court to make weight of the evidence determinations.") (quoting *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001)).

To the extent Petitioner is attempting to raise a constitutional challenge to the legal sufficiency of the evidence, such a claim is procedurally defaulted, because he did not raise it on direct appeal. *See*, *e.g.*, *Williams v. Marshall*, No. 09 CIV. 7411 RJH MHD, 2011 WL 2175810, at *9 (S.D.N.Y. Mar. 30, 2011) ("[P]etitioner has not satisfied the exhaustion requirement of section 2254(b) because he never presented an evidentiary-insufficiency argument to the Appellate Division. His arguments were directed exclusively to the weight-of-the-evidence standards under New York Law, citing only state cases addressing

that test.   In that briefing he offered no indication that he was suggesting that his constitutional right not to be convicted except upon proof of guilt beyond a reasonable doubt was violated.  This mode of argument did not 'fairly present' the constitutional claim to the state courts.") (citations omitted), *report and recommendation adopted*, No. 09 CIV. 7411 RJH MHD, 2011 WL 2175806 (S.D.N.Y. June 2, 2011); *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 512-13 (N.D.N.Y. 2016) ("[C]ases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that 'a weight claim cannot stand in for a constitutional sufficiency claim when considering whether a habeas petitioner has exhausted state court remedies because the two claims are no more than somewhat similar.'") (quoting *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 WL 1300030, at *12 (S.D.N.Y. Mar. 23, 2015) (citations omitted).

At this stage, Petitioner has no avenues in state court by which to exhaust the legal insufficiency claim.  First, he has already utilized the one direct appeal of a conviction to which he is entitled.  *Colon v. Connell*, No. 07 Civ. 7169(BSJ)(JCF), 2009 WL 2002036, at *6 n.4 (S.D.N.Y. July 9, 2009) (citing N.Y. R. CT. § 500.20(d) and N.Y. Crim. Proc. Law § 460.10(5) (providing for a 30-day window for any such application to be filed); N.Y. R. CT. § 500.20(a)(2) (leave letter must indicate that "that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available")).  Second, he cannot raise the legal insufficiency claim in a collateral motion to vacate under C.P.L. § 440.10 because the claim was apparent on the trial record and could have been raised on direct appeal.  Therefore, the state court would be required to deny it

pursuant to CPL § 440.10(2)(c).[3]  *See Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record.") (citations omitted).

Petitioner also cannot show cause, prejudice, or a miscarriage of justice.  He has offered no reason why he could not have raised a legal insufficiency argument on direct appeal.  Further, his legal insufficiency argument lacks merit—it consists essentially of an attack on the credibility of the minor victims.  Indeed, Petitioner does not dispute that the minor victims' testimony, if believed, was sufficient to establish the elements of the crimes of conviction, but argues that their testimony "was not worthy of belief and utterly uncorroborated by the trial physical evidence and testimony evid[e]nce."  (Dkt. 7 at 10-11).  However, it is well-established that assessments of the credibility of witnesses are not grounds for reversal on federal habeas review.  *See, e.g., Jones v. Artus*, 615 F. Supp. 2d 77, 86 (W.D.N.Y. 2009); *Taylor v. Poole*, 538 F. Supp. 2d 612, 619 (S.D.N.Y. 2008).

Finally, and as previously noted, Petitioner has not raised a colorable argument of actual innocence.  Again, his actual innocence contention is based on his own interpretation of the evidence at trial and an attack on the credibility of the minor victims.  This is insufficient to meet the applicable legal standard.

---

[3]    The recent amendment to CPL § 440.10 impacted only ineffective assistance of counsel claims and thus has no bearing on Petitioner's ability to bring a claim for legal insufficiency of the evidence.

## CONCLUSION

For the reasons set forth above, the Court denies Petitioner's motions for a stay (Dkt. 40) and for expert and investigative services (Dkt. 46) and denies the amended petition (Dkt. 7). The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). The Clerk of Court is directed to enter judgment in favor of Respondent and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  September 2, 2022
        Rochester, New York